

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LEON A. MAZZA                :        CIVIL ACTION
                            :
        v.                   :
                            :
MICHAEL J. ASTRUE,           :
Commissioner of Social Security   :    NO. 08-0606

**FILED**

MICHAEL E. KUNZ, U...
By _____ Dep. Clerk

## REPORT AND RECOMMENDATION

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE            February 6, 2009

This action was brought pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. For the reasons that follow, I find that the Commissioner's final decision does not contain substantial evidence to support the findings of fact and conclusions of law of the Administrative Law Judge ("ALJ"). Therefore, I recommend that the case be remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed for DIB and SSI on February 20, 2006, alleging disability as of October 1, 1999. Tr. at 98-109.[1] Plaintiff's application was denied on September 12, 2006, after which Plaintiff requested an administrative hearing. Id. at 66-

---

[1] The ALJ found that Plaintiff engaged in substantial gainful activity through June 2004, and therefore focused his attention on the period beginning with July 2004. Id. at 23, 113-14. Plaintiff does not dispute this finding. See Pl.'s Br. at 2.

73, 74. On May 25, 2007, an ALJ held an administrative hearing at which Plaintiff and a

Vocational Expert ("VE") testified. Id. at 30-62. In a decision dated August 31, 2007,

the ALJ found Plaintiff not disabled because, although he could not perform any past

relevant work due to his severe impairments, there were a significant number of sedentary

jobs that Plaintiff could perform. Id. at 18-29.

Plaintiff appealed the unfavorable decision to the Appeals Council, which denied

Plaintiff's request for review on December 18, 2007. Id. at 10-13, 5-8. Therefore, the

decision of the ALJ is the final decision of the Commissioner. 20 C.F.R. §§ 404.981,

416.1472.

Plaintiff filed his Complaint in this action on February 21, 2008. Plaintiff

submitted his Brief and Statement of Issues in Support of Request for Review on June 10,

2008, and Defendant filed his Response to Request for Review on July 14, 2008. The

matter is now ripe for review.

## II.   **LEGAL STANDARD**

The role of this court on judicial review is to determine whether the

Commissioner's decision is supported by substantial evidence. 42 U.S.C. §§ 405(g),

1383(g); Richardson v. Perales, 402 U.S. 389 (1971); Hartranft v. Apfel, 181 F.3d 358,

360 (3d Cir. 1999). Therefore, the issue in this case is whether there is substantial

evidence to support the Commissioner's conclusion that Plaintiff is not disabled.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate," and must be "more than a mere scintilla." Burnett v. Comm'r of Soc. Sec.,
220 F.3d 112, 118 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.
1999)). The court has plenary review of legal issues. Schaudeck v. Comm'r of Soc. Sec.,
181 F.3d 429, 431 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)).

To prove disability, a claimant must demonstrate "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last . . . not less than twelve months." 42 U.S.C. § 423(d)(1). The Commissioner employs a five-step process, evaluating:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities;

3. If so, whether, based on the medical evidence, the claimant's impairment or combination of impairments meets or equals the criteria of an impairment listed in the "listing of impairments," 20 C.F.R. pt. 404, subpt. P, app. 1 (2007), which results in a presumption of disability;

4. If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work; and

5. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Allen v. Barnhart, 417 F.3d 396, 401 n.2 (3d Cir. 2005) (quoting Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000)) (internal citations omitted); see 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The Plaintiff bears the burden of proof for steps one through four of this test, while the Commissioner bears the burden of proof for the last step.  See id.

### III.   FACT RECORD AND THE ALJ'S DECISION

#### A.   Plaintiff's Background and Testimony

Plaintiff was 41 years of age at the time of his alleged onset of disability, 46 years of age when he stopped working in June 2004, and 49 years and five months of age at the time of the ALJ's decision.  Tr. at 28.  He is 5-feet, 8 inches tall and weighed 275 pounds at the time of his administrative hearing.  Id. at 36.[2]  Plaintiff lives alone with his wife in a one-floor house.  Id. at 37-38.  He graduated from high school and received automotive vocational training.  Id. at 39.  Plaintiff has past relevant work as a truck driver, heavy equipment mechanic and lawn mower repairman, the latter performed through June 2004.  Id. at 28, 40-42, 44.

Plaintiff testified that he is unable to work due to constant pain in his lower back, which he rated as 8 or 9 on a scale of 1-10, and that the pain radiates into his legs along

---

[2]Plaintiff testified that he had gained 50 or 60 pounds during the year prior to the administrative hearing, and that he reached a high of 297 pounds.  Id. at 36-37.  In reviewing the medical evidence, the ALJ stated that Plaintiff "weighed between 268 and 289 pounds."  Id. at 27.

4

the sciatic nerve. Tr. at 45, 48, 51-52.  He spends most daytime hours lying down and wakes up at least once an hour during the night because of pain.  Id. at 47, 50.  He can stand for "maybe 15, 20 minutes," walk a single block and lift "[m]aybe 10 pounds, without killing [his] back,"  Id. at 46.  Bending down is "a big issue" for him, and he stated that he would need assistance getting up if he attempted to get something from the floor.  Id. at 46, 51.  He also stated that his wife "does everything" around the house, including mowing the lawn, and that she ties his shoes.  Id. at 47, 50-51.[3]

Plaintiff testified that he stopped taking any kind of medication because he "started passing blood from taking too many Advils," and that he focuses on main management. Tr. at 47.  He visited a chiropractor one time.  Id. at 53

## B.    The Medical Evidence

Plaintiff treated sporadically with Kathryn Hennessey, D.O., for chronic back pain. In an office note dated July 14, 2005, Dr. Hennessey observed that Plaintiff tested positive for back pain on the right side during straight-leg testing,[4] and assessed Plaintiff

---

[3]The record also contains a daily activities questionnaire completed by Plaintiff on April 18, 2006.  Tr. at 142-45.  Plaintiff indicated that his activities have been drastically curtailed by back pain and that his wife performs nearly all household chores and helps him dress.  Id. at 143-45.  Plaintiff also indicated that can drive a car for half an hour, cook, carry 2 bags of groceries, and perform some home maintenance.  Id. at 144.

[4]The straight leg-raising test is a diagnostic tool which detects nerve root pressure caused by disc herniation.  The test is positive when an individual, lying in a supine position, complains of pain when his or her fully extended leg is raised to less than a 60-degree level out of a possible maximum of 90 degrees.  See G. Andersson and T. McNeill, Lumbar Spine Syndromes, 35, 78-79 (1989).

with lumbar pain. Tr. at 201. Plaintiff subsequently reported to Dr. Hennessey, on May 10, 2006, that his back pain increased with walking and sitting for too long, and that the pain increasingly radiated into his legs. Id. at 199.

Plaintiff visited a hospital emergency room on October 25, 2005, after twisting his back when getting out of the tub. Tr. at 164-65. He reported being unable to stand up momentarily, and that his right lower extremity was numb to his toes. Id. at 165. Upon evaluation, Plaintiff exhibited muscle spasm and decreased range of motion. Id. at 166. He was diagnosed with a back strain/sprain and discharged. Id. at 167.

Steven J. Valentino, D.O., a board certified orthopedic surgeon, examined Plaintiff at Dr. Hennessey's request on February 7, 2006. Tr. at 174-75. Plaintiff complained of low back pain ("right greater than left") which increased with "everything," and which could occasionally be relieved with rest. Id. at 174. He stated that he never fully recovered from a work-related injury sustained in the 1990s and that his symptoms became significantly worse over the past year and a half. Id. He took Motrin for his pain. Id. Plaintiff weighed 260 pounds at the time of the examination. Id. at 175. Dr. Valentino found that Plaintiff exhibited significantly limited range of motion in all planes; significant pain at the right L4 through S1 vertebra upon extension combined with side bending; and significant spasm, as well as facet synovitis[5] and effusion, upon palpation

---

[5]Synovitis is defined as inflammation of a synovial membrane contained in joint cavities, bursae, and tendon sheaths; it is usually painful, particularly on motion, and is characterized by a fluctuating swelling due to effusion (escaped fluid) within a synovial

and inspection of the lumbar spine. Id. Plaintiff also exhibited tenderness on the right side of the sacroiliac (SI) joint,[6] joint pain upon pelvic compression, and low back pain bilaterally during both straight leg raising and femoral stretch tests. Id. Dr. Valentino diagnosed Plaintiff with low back pain, recommended diagnostic testing and a gentle home exercise program, and encouraged Plaintiff to quit smoking and lose weight. Id.

On June 20, 2006, Plaintiff underwent a consultative examination by Michael Overbeck, M.D. Tr. at 178-80. Plaintiff's weight had increased to 289 pounds, while his medications consisted of Advil or Aleve. Id. at 178, 180. Plaintiff told Dr. Overbeck that he sustained a work-related back injury on October 1, 1999, and that continuous lower back pain thereafter forced him to stop working in 2004. Id. at 178. Plaintiff reported experiencing severe pain that increased when he sat too long or walked more than half a block, and that the pain radiated down both legs, mostly on the left. Id. Upon examination, Dr. Overbeck found that Plaintiff exhibited reduced muscle strength and diminished reflexes and sensitivity in the lower extremities, and that he tested positive for lower back pain during straight leg raising tests in both the sitting and supine positions. Id. at 179-80. Dr. Overbeck observed that Plaintiff had a problem bending forward. Id. at 180. The doctor diagnosed Plaintiff with chronic severe low back pain with signs of

---

sac. Dorland's Illustrated Medical Dictionary, 31st ed. (2007) ("DIMD"), at 1879.

[6]The SI joint is the joint between the sacrum, the triangular-shaped bone at the base of the spine, and the ilium of the pelvis. It is a strong, weightbearing joint. See Http://www.medicinenet.com/sacroiliac_joint_pain/article.htm (last visited January 29, 2009).

radiculopathy[7] mostly down the left side, as well as reduced muscle strength in the left lower extremity, and with obesity. Id.

Also on June 20, 2006, Dr. Overbeck completed a form entitled "Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities" (hereinafter, medical source statement). Tr. at 183-84. The doctor opined that Plaintiff could occasionally lift and/or carry 2-3 pounds, stand and walk for 1 hour or less in an 8-hour day ("15 minutes"), sit for less than 6 hours in an 8-hour workday ("15-30 minutes"), and that his ability to push and pull was limited in both the upper and lower extremities. Id. at 183. With regard to postural activities, Dr. Overbeck opined that Plaintiff could occasionally bend, but that he could never kneel, stoop, crouch, balance or climb. Id. at 184. The doctor assessed Plaintiff with no other physical functional limitations, but indicated that he should avoid poor ventilation, heights, moving machinery, vibration, temperature extremes, chemicals, wetness, dust, noise, fumes and orders, and humidity. Id.

Dr. Overbeck ordered x-rays of Plaintiff which were obtained on June 22, 2006. The x-rays revealed anterior osteophytes[8] at the levels of T11, L2-3, L3-4 and L5-S1, with a suggestion of mild discogenic disease at L3-4. Tr. at 182. The technician's

---

[7]Radiculopathy is a disease of the nerve roots characterized by pain that radiates to the extremities. See http://www.medterms.com/script/main/art.asp?articlekey=14161 (Last visited January 29, 2008).

[8]An osteophyte is a bony outgrowth. DIMD at 1369.

impressions included spondylosis deformans[9] and minimal facet arthrosis,[10] loss of normal lumbar lordosis,[11] and possible sclerosis[12] of the right side of L5 (an uncertain finding for which a repeat scan was recommended).  Id.

Meanwhile, Plaintiff missed an appointment with Dr. Hennessey, his treating physician, in June 2006.  Tr. at 198.  In October 2006, Plaintiff told Dr. Hennessey that he could not afford Mobic, a prescription pain reliever, and that he received no relief from ibuprofen.  Id. at 197.

On October 25, 2006, Dr. Hennessey assessed Plaintiff's functional abilities in a medical source statement.  Tr. at 185-88.  Dr. Hennessey opined that Plaintiff could occasionally lift/carry less than 10 pounds, stand and/or walk less than 2 hours in an 8-hour workday, and sit for less than 6 hours in an 8-hour workday, and that his ability to push and pull was limited in both the upper and lower extremities.  Id. at 185-86.  With regard to postural activities, Dr. Hennessey opined that Plaintiff could never climb, balance, kneel, crouch, crawl or stoop.  Id. at 186.  With regard to manipulative limitations, the doctor opined that Plaintiff had limited ability to reach in all directions

---

[9]Spondylosis deformans refers to a deformity caused by the dissolution of a vertebra.  DIMD at 1780.

[10]Arthosis refers to arthropathy, meaning joint disease.  DIMD at 160.

[11]Lordosis refers to the concave portion of the spinal column as seen from the side. DIMD at 1090.

[12]Sclerosis refers to an induration or hardening of tissue.  DIMD at 1705.

and handle objects (gross manipulation), but unlimited ability in fingering (fine manipulation) and feeling.  Id. at 187.  Dr. Hennessey stated that Plaintiff should avoid hazards such as machinery and heights, but that he had no other environmental limitations.  Id.

On December 5, 2006, Dr. Hennessey completed a form for the Department of Public Welfare (DPW) in which she opined that Plaintiff was "temporarily disabled - 12 months or more" due to chronic lumbar pain and depression.  Tr. at 194.  The record contains another copy of the same form but the "temporarily disabled" box is scratched out and instead the "permanently disabled" box is checked.  Id. at 193.  The record also contains what appears to be a note from Dr. Hennessey to someone in her office stating "I did not make changes on Mr. Mazza's form or complete Mrs. Mazza's form.  Please terminate them from the practice."  Id. at 92.  The ALJ asked Plaintiff whether he was terminated from the practice for altering a form, and he responded that he was terminated for financial reasons.  Id. at 52-53.[13]

### C.    The VE Testimony and ALJ Opinion

At Plaintiff's administrative hearing, the ALJ obtained testimony from a VE.  Tr. at 54-61.  The VE testified that Plaintiff's past relevant work as a mechanic fell into separate categories – skilled, medium exertional and skilled, heavy exertional – and that

---

[13]The record inexplicably contains a few pages of medical records concerning a patient other than Plaintiff.  Tr. at 205-12.  As the parties make no mention of these records, I will assume they are not relevant.

his work as a truck driver ranged from medium to heavy, semiskilled. <u>Id.</u> at 54-55.[14]  The

VE opined that, if Plaintiff's testimony was found to be credible and consistent with the

medical evidence of record, he could not perform his past relevant work or any other

work. <u>Id.</u> at 60.[15]

The ALJ found through his review of the objective medical evidence and

administrative hearing testimony that Plaintiff was not disabled within the meaning of the

Social Security Act. <u>Tr.</u> at 17.  The ALJ analyzed the case as follows:

1. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009. <u>Id.</u> at 23.

2. At step one, Plaintiff engaged in substantial gainful activity after October 1, 1999, the alleged onset date, but had no substantial gainful activity after July 2004. <u>Id.</u>

3. At step two, Plaintiff had the following severe impairments: low back pain, obesity, hypertension, and sleep apnea. <u>Id.</u> at 23-24.

4. At step three, Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. <u>Id.</u> at 24.

5. Plaintiff retained the RFC to perform the full range of sedentary work. <u>Id.</u> at 24-27.

---

[14]Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. 20 C.F.R. §§ 404, 1567(d), 416.967(d).  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. §§ 404.1567(c), 416.967(c).

[15]The remainder of the examination is unclear as to what limitations the ALJ wanted the VE to consider. <u>Tr.</u> at 56-60.

6.     At step four, Plaintiff was unable to perform any past relevant work. Id. at 27-28; and

7.     At step five, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. Id. at 28.[16]

In his Request for Review, Plaintiff argues that the opinion of the ALJ is not supported by substantial evidence because (1) the ALJ erroneously found that Plaintiff retained the RFC to perform the full range of sedentary work, (2) the ALJ improperly relied on the Medical-Vocational Guidelines (the "Grids") to find Plaintiff not disabled, and (3) the ALJ improperly relied on a hypothetical to the VE that omitted Plaintiff's postural limitations.

## IV.     DISCUSSION

### A.     The ALJ's RFC Assessment

Plaintiff first argues that the ALJ's opinion is not supported by substantial evidence because the ALJ erroneously found that Plaintiff retained the RFC to perform the full range of sedentary work. See Pl.'s Br. at 4-8. Specifically, Plaintiff argues that the ALJ failed to give proper weight to the opinions of the three doctors who evaluated

---

[16]The ALJ also found that Plaintiff, who was 49 years and 5 months old at the time of the ALJ's opinion, qualified as a "younger" individual (that is, an individual between the ages of 45 and 49); that Plaintiff had at least a high school education and was able to communicate in English; and that transferability of job skills was not material to the determination of disability. Id. at 28. Plaintiff does not challenge these aspects of the ALJ's opinion.

Plaintiff. Plaintiff relies principally on the opinions of Dr. Hennessey,[17] Plaintiff's

treating physician, and Dr. Overbeck, who examined Plaintiff at the request of the state

agency. Respondent counters that the ALJ's RFC determination is supported by

substantial evidence and that the ALJ properly declined to give controlling weight to the

opinions of Drs. Overbeck and Hennessey. See Resp. at 2-10.

As noted above, the medical records document Plaintiff's reports of chronic low

back pain beginning in 2005 when Plaintiff first saw Dr. Hennessey. Tr. at 201. Based

on Plaintiff's pain and positive results on the straight-leg test, Dr. Hennessey referred

Plaintiff to Dr. Valentino, an orthopedic surgeon. Dr. Valentino documented Plaintiff's

back pain along his spine, including spasm, inflammation and pain during the straight leg

and femoral stretch tests. Id. at 174-75. Dr. Overbeck's examination revealed similar

results, and in addition found reduced muscle strength and diminished reflexes and

sensitivity in the lower extremities. Id. at 178-80.

Both Drs. Overbeck and Hennessey reached similar conclusions with respect to

Plaintiff's functional abilities in light of his back pain. With some minor differences, they

concluded that he could occasionally lift and carry less than 10 pounds, stand and walk

less than 2 hours in an 8-hour day, sit for less than 6 hours in an 8-hour day, and that his

ability to push and pull was limited in his upper and lower extremities. Tr. at 183, 185-

86. Although the ALJ's conclusion that Plaintiff could perform sedentary work is

---

[17]Plaintiff mistakenly refers to Dr. Hennessey as "Dr. Harrison." Pl.'s Br. at 6-7.

consistent with these opinions,[18] the ALJ did not rely on the doctors' opinions with respect to postural limitations.  The doctors agreed that Plaintiff could never kneel, stoop, crouch, balance or climb.  Id. at 184, 186.  Dr. Overbeck believed that Plaintiff could bend only occasionally, and Dr. Hennessey believed that he should never crawl.  Id. at 184, 186.[19]  Additionally, Dr. Hennessey found that Plaintiff was limited to occasional reaching and handling, whereas Dr. Overbeck found no limitation in these manipulative abilities.  Id. at 184, 187.

In weighing these opinions to formulate Plaintiff's RFC, the ALJ wrote that Dr. Hennessey's opinion "is too extreme in light of the findings and conservative treatment.  I note in particular no basis for any limitations involving reaching or handling and no medical documentation to support a complete prohibition on performing postural activities."  Tr. at 26.  The ALJ also stated that Plaintiff's apparent alteration of Dr. Hennessey's disability form "casts a negative light on [Plaintiff's] credibility and results in my giving little weight to the opinion of Dr. Hennessey . . . as it was based in part on the self-report of [Plaintiff]."  Id.  With respect to Dr. Overbeck's findings, the ALJ stated

---

[18]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  20 C.F.R. §§ 404.1567(a), 416.967(a).  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Id.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  Id.

[19]The forms that the doctors used were not identical, in that the postural limitations listed on Dr. Overbeck's form did not include crawling, and the form Dr. Hennessey used did not include bending.  Tr. at 184, 186.

that " I find that this opinion is not entitled to full weight.  The findings on physical

examination do not justify the inability to do most postural activities. . . .  Furthermore,

the findings of reduced strength, reflexes and sensation on this one occasion were not

observed and documented by Dr. Hennessey, who treated [Plaintiff] over a long period of

time."  Id. at 27.

The key question in this case is whether there was substantial evidence to support

the ALJ's rejection of Drs. Hennessey's and Overbeck's opinions regarding Plaintiff's

postural limitations.  This is because the doctors' opinions – that Plaintiff could "never"

climb, balance, kneel, crouch, or stoop – are inconsistent with the ALJ's finding that

Plaintiff could perform a full range of sedentary work.  See, e.g., S.S.R. 85-15

("Stooping, kneeling, crouching, and crawling are progressively more strenuous forms of

bending parts of the body . . ."); S.S.R. 96-9p ("A complete inability to stoop would

significantly erode the unskilled sedentary occupational base . . .").  I conclude that the

ALJ's complete rejection of the postural limitations found by Drs. Hennessey and

Overbeck is flawed and not supported by substantial evidence.

First, it is important to note the relationship between Plaintiff and the doctors at

issue.  It is not disputed that Dr. Hennessey was Plaintiff's treating physician, and as such

her opinion is entitled to deference.  As a general rule, "treating physicians' reports

should be accorded great weight, especially 'when their opinions reflect expert judgment

based on a continuing observation of the patient's condition over a prolonged period of

15

time.'" <u>Plummer</u>, 186 F.3d at 429 (quoting <u>Rocco v. Heckler</u>, 826 F.2d 1348, 1350 (3d

Cir. 1987)); <u>see also</u> S.S.R. 96-2P, "Policy Interpretation Ruling: Giving Controlling

Weight to Treating Source Medical Opinions" (providing for controlling weight where

treating physician opinion is well-supported by medical evidence and not inconsistent

with other substantial evidence in record).  The opinions of a treating physician are

entitled to controlling weight where the physician's opinion on the issues of the nature

and severity of a claimant's impairment "is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in the record."  20 C.F.R. § 404.1527(d)(2).

Although Dr. Overbeck saw Plaintiff only once and did not treat him, he was the

physician retained by the state agency to provide an opinion, and he conducted a physical

examination of Plaintiff prior to submitting his report.  Thus, his opinions should not be

rejected lightly, particularly as they are consistent with the treating physician's opinions.

In addition to the similar opinions of these two doctors, there are no contrary medical

opinions in the record to support the ALJ's complete rejection of Plaintiff's postural

limitations.  <u>See Plummer</u>, 186 F.3d at 429 ("An ALJ may reject a treating physician's

opinion outright only on the basis of contradictory medical evidence, but may afford a

treating physician's opinion more or less weight depending upon the extent to which

supporting explanations are provided") (citing <u>Newhouse v. Heckler</u>, 753 F.2d 283, 286

(3d Cir. 1984)).

The ALJ's proffered reasons for not relying on the doctors' opinions are not sufficient for the wholesale rejection of those opinions. The ALJ concluded that Plaintiff's apparent alteration of Dr. Hennessey's disability form from "temporarily" to "permanently" disabled "casts a negative light" on Plaintiff's credibility, and in turn on Plaintiff's self-report of his symptoms. Tr. at 27. Certainly it was within the ALJ's province to assess Plaintiff's credibility. Nevertheless, Dr. Hennessey's, as well as Dr. Overbeck's, opinions regarding Plaintiff's postural limitations were based not only on self report but on their physical examinations which resulted in findings consistent with Plaintiff's reported low back pain.

The ALJ did not agree that the doctors' opinions were consistent with the medical findings, and also doubted the extent of Plaintiff's limitations in view of the limited treatment he sought and received. Tr. at 26-27. It is true that Plaintiff did not receive regular treatment for his severe back pain, and that he relied primarily on over-the-counter pain medication. Nevertheless, this does not negate the doctors' findings during their physical examinations of Plaintiff. Rather, the existence of postural limitations is strongly supported by the medical evidence of record, such as repeated positive results on the straight-leg raise tests, Dr. Valentino's findings of back pain and muscle spasm, and diagnostic tests. Id. at 175, 179-80, 182, 201.

Despite the aforementioned – and despite the admonition that an ALJ may not substitute his or her own medical judgment for that of a competent treating medical

17

source, see Van Horn v. Schweiker, 717 F.2d 871, 874 (3d Cir. 1983) – the ALJ not only

failed to give full weight to the opinions of Dr. Hennessey and Dr. Overbeck regarding

Plaintiff's postural limitations, but apparently failed to give them any weight at all. As a

result, I find that the ALJ's RFC assessment is not supported by substantial evidence. I

therefore recommend that this matter be remanded for further consideration of Plaintiff's

RFC, with particular emphasis on Plaintiff's postural limitations.

### B.     The ALJ's Reliance on the Grids

Plaintiff next argues that the that the ALJ's opinion is not supported by substantial

evidence because the ALJ improperly relied on the Grids to find Plaintiff not disabled.

See Pl.'s Br. at 9-11. This argument is related to the first argument insofar as Plaintiff

asserts that the Grids cannot be used when a claimant has postural limitations.[20]

Respondent counters that the ALJ properly relied on the Grids. See Resp. at 10-12.

In order to simplify and expedite the determination of disability at step five (5), an

ALJ applies the Grids, which are found at 20 C.F.R. Part 404, Subpart P, Appendix 2.

The Grids contain a collection of administratively noticed rules contained in several

tables directing a conclusion of "disabled" or "not disabled" in individual cases based on

various combinations of a claimant's RFC, age, education, and previous work experience.

---

[20]In the context of the Grids argument, Plaintiff also argues that the ALJ erred by relying on a Social Security Ruling (S.S.R.) as a substitute for VE testimony without giving Plaintiff advance notice. See Pl.'s Br. at 9-10. This argument appears to be without basis, as there is no indication that the ALJ relied on a S.S.R. as a substitute for VE testimony.

See 20 C.F.R. § 404.1569. The Grids are categorized according to whether the individual's RFC can sustain sedentary, light, or medium work. See Appendix 2, Table 1 (Sedentary), Table 2 (Light), Table 3 (Medium). In this case, the ALJ found that Plaintiff retained the RFC to perform the full range of sedentary work and that, considering Plaintiff's age, education and work experience, a finding of "not disabled" was directed by the Grids. Tr. at 28.

The Grids are limited in their application because they are based solely on exertional limitations, that is, limitations that affect a person's ability to meet the strength demands of jobs. See Sykes v. Apfel, 228 F.3d 259, 270 (3d Cir. 2000) (stating Grids are to be used when claimant has only strength-related limitations). Limitations that affect abilities other than strength are known as nonexertional limitations. These include postural limitations, such as bending, stooping and kneeling. 20 C.F.R. §404.1525(d); Stunkard v. Secr. of Health & Human Serv., 841 F.2d 57, 61 (3d Cir. 1988); S.S.R. 85-15, "Capability To Do Other Work – the Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments" ("Nonexertional limitations can affect the abilities to reach; to seize, hold, grasp, or turn an object (handle); to bend the legs alone (kneel); to bend the spine alone (stoop); or bend both the spine and legs (crouch)."). Thus, it is improper for an ALJ to rely solely on the Grids where a claimant presents only non-exertional limitations, or a combination of exertional and non-exertional limitations. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 93-94 (3d Cir. 2007); Sykes, 228 F.3d at

270. An exception to this rule exists where the ALJ finds that some nonexertional limitations exist, but that they are insignificant. See Caruso v. Comm'r of Soc. Sec., 99 Fed. Appx. 376, 381-82 (3d Cir. 2004) (affirming ALJ decision based on Grids where "there exists some evidence of postural limitations, [but] taken as a whole, the objective medical evidence coupled with . . . testimony substantially supports the ALJ's conclusion that any such limitations were not significant").

I have already determined that the matter must be remanded for re-evaluation of Plaintiff's postural limitations. If, upon remand, the ALJ determines that Plaintiff has postural limitations, reliance on the Grids is generally precluded and the ALJ should obtain supplemental VE testimony on the question of whether there are available jobs that Plaintiff can perform. See Sykes, 228 F.3d at 270. If, on the other hand, the ALJ finds that Plaintiff does not have postural limitations, or that postural limitations exist but are "insignificant," the ALJ may rely on the Grids, with the caveat that Plaintiff is now more than 50 years of age and has therefore moved from a "younger individual" to a person "closely approaching advance age" (that is, an individual between the ages of 50 and 54). See 20 C.F.R. Part 404, Subpart P, Appendix 2.[21]

---

[21]During Plaintiff's administrative hearing, the VE testified that Plaintiff did not have skills transferable to sedentary work. Tr. at 56. Although the ALJ concluded that the transferability of job skills was not material to the determination of disability because the Grids directed a finding of "not disabled" regardless, see id. at 28, this conclusion may change now that Plaintiff is more than 50 years of age. See 20 C.F.R. Part 404, Subpart P, Appendix 2.

### C.   The ALJ's Hypothetical to the VE

Plaintiff next claims that the ALJ improperly relied upon an incomplete hypothetical to the VE insofar as the hypothetical omitted Plaintiff's alleged postural limitations. See Pl.'s Br. at 11-12. Testimony of a VE constitutes substantial evidence for purposes of judicial review where a hypothetical question considers all of a claimant's impairments which are supported by the medical record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). The hypothetical must examine four essential factors: (1) claimant's age; (2) claimant's education; (3) claimant's past work experience; and (4) claimant's RFC. 20 C.F.R. §§ 404.1505(a), 416.905(a). "Hypotheticals are considered deficient when important factors are omitted or the claimant's limitations are not adequately portrayed." Emery v. Astrue, 07-cv-2482, 2008 WL 5272454, at *3 (E.D. Pa. Dec. 18, 2008) (Robreno, J.) (citing Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)).

The Commissioner argues that the ALJ was not required to ask the VE hypothetical questions pertaining to Plaintiff's postural activities, both because the ALJ did not find any postural limitations and because the ALJ's adverse decision relied on the Grids, thus eliminating the need to rely on VE testimony. See Resp. at 12. As previously explained, I recommend that this matter be remanded for further consideration of Plaintiff's RFC, with particular emphasis on Plaintiff's postural limitations, and because

reliance on the Grids may thereafter be foreclosed.  As a result, I do not find it necessary to further consider this claim at this time.[22]

Accordingly, I make the following:

## **RECOMMENDATION**

AND NOW, this ⟨6th⟩ day of February 2009, it is RESPECTFULLY RECOMMENDED that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report, Judgment be entered REVERSING the decision of the Commissioner of Social Security for the purposes of this remand only, and the relief sought by Claimant be GRANTED to the extent that the matter be REMANDED for further proceedings consistent with this adjudication.  The Parties may file objections to this Report and Recommendation.  See Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE

---

[22]Should it be necessary to obtain supplemental VE testimony on remand, it is of course critical that the hypothetical question(s) asked of the VE, and the VE's response, be clear enough to be understood on review.  The administrative hearing transcript does not disclose either a clearly worded hypothetical or a clearly worded response.  Tr. at 56-60.  On remand, the ALJ should take steps to ensure that, if he obtains additional VE testimony, the testimony is comprehensible for purposes of judicial review.

22

E-mailed :
  D. Griffin
  M. Boyle
  N. Cerulli

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LEON A. MAZZA                          :        CIVIL ACTION
                                       :
        v.                             :
                                       :
MICHAEL J. ASTRUE,                     :
Commissioner of Social Security        :        NO. 08-0606

## ORDER

AND NOW, this                day of                      2009, upon careful and

independent consideration, the record reveals that the Commissioner did not apply correct

legal standards and that the record does not contain substantial evidence to support the

ALJ's findings of fact and conclusions of law.  Therefore, it is hereby ORDERED that:

1.      The Report and Recommendation is APPROVED AND ADOPTED;

2.      Judgment is entered REVERSING the decision of the Commissioner of
        Social Security for the purposes of this remand only and the relief sought by
        Plaintiff is GRANTED to the extent that the matter is REMANDED for
        further proceedings consistent with this adjudication; and

3.      The Clerk of Court is hereby directed to mark this case closed.

BY THE COURT:

_____

STEWART DALZELL, J.